IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br>VALDOMERO OCHOA PINEDA,<br>**Defendant.** | 1:06-cr-350-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendant Valdomero Ochoa Pineda's Objections ("Objections") [106] to Magistrate Judge Linda Walker's Report and Recommendation (R&R) [105] on Defendant's Motion to Dismiss [31] and Motion to Suppress [32]. Defendant moved to dismiss the indictment on the grounds it was returned more than thirty (30) days after he was arrested by state authorities and that the delay violated the Speedy Trial Act, 18 U.S.C. § 3161(b), (c)(1). Defendant also moved to suppress evidence seized from his F-150 pick-up truck following a traffic stop on the grounds that the officer making the stop manipulated Defendant into committing various traffic violations, and thus the search of his truck after the stop was, in the absence of a search warrant, unconstitutional. Defendant objects to the Magistrate Judge's recommendation that the motions to

dismiss and to suppress be denied.

## I.     STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a de novo determination of those portions of the report or specify proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. by Earnest S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal quotation marks and citation omitted). With respect to those findings and recommendations to which the Defendant has not asserted objections, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

Defendant has not specifically objected to the facts set forth in the R&R,[1] electing instead to interpret the evidence developed at the April 11, 2007 evidentiary hearing (the "April 11 Hearing") in a manner that supports his general Objections. In the absence of a specific objection, the Court has considered the findings of fact recommended by the Magistrate Judge in light of the Defendant's Objections, and the Court has reviewed the proposed findings and recommendations for plain error. Upon review, the Court adopts the findings of fact and recommendations in the R&R.

## II.   DISCUSSION

### A.   Defendant's Motion to Dismiss the Indictment

The Defendant notes that on July 9-10, 2006, Drug Enforcement Administration ("DEA") agents were conducting an investigation of drug

---

[1] The Order for Service of Report and Recommendation [105] required Defendant to "specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable)." The only specific objection made by the Defendant about the Magistrate Judge's findings of fact located on page 6 of the Objections, in which Defendant claims the Magistrate Judge did not note Defendant's testimony that "[h]e was not swerving, speeding or engaging in any other conduct that would authorize the police officer to stop the defendant." Objections at 6. Defendant did not provide a transcript citation for this summary of testimony. While the Court notes this observation, the Court has reviewed in detail the transcript of the evidentiary hearing and reached its own conclusions about the facts presented at the hearing.

smuggling activities and had intercepted, by wiretap, certain conversations indicating that Defendant would be transporting drug material in his F-150 pick-up truck on July 10, 2006.  Defendant notes that DEA officials contacted Sgt. John Kanupke, a Doraville Police Department uniformed officer, and requested that he stop Defendant's vehicle if he had probable cause to do so.  Because the DEA coordinated with Sgt. Kanupke, Defendant contends he was arrested by the Doraville Police Department for the sole purpose of "facilitat[ing] this federal prosecution."  Objections at 12.  That is, Defendant argues that his arrest by state authorities on July 10, 2006, was really an arrest on federal charges and thus Defendant argues he was required to be indicted within thirty (30) days of his arrest.  Because he was indicted more than thirty (30) days after he was arrested by state authorities, Defendant argues that the Speedy Trial Act requires dismissal of the indictment.[2]

It is well-established that even when there is "substantial" or "extensive" federal involvement in an investigation that results in an arrest by state authorities,

---

[2] The Speedy Trial Act provides:  "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).

such federal involvement does not cause a state arrest to start the speedy trial clock.  <u>United States v. Russo</u>, 796 F.2d 1443, 1451 (11th Cir. 1986); <u>United States v. Taylor</u>, 814 F.2d 172, 175 (5th Cir. 1987), <u>cert. denied</u>, 484 U.S. 865 (1987).  Indeed, only a "'federal arrest' triggers the running of the thirty day time period set forth in § 3161(b)."  <u>United States v. Benitez</u>, 34 F.3d 1489, 1493 (9th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1197 (1995).  The 30-day period in § 3161(b) runs from the time of a state arrest only if the state detention was "a ruse to detain the defendant solely for the purpose of bypassing the requirements of the [Speedy Trial] Act."  <u>Id.</u> at 1494.

   The record does not support that the Defendant was arrested on federal charges on July 10, 2006.  On July 10, 2006, Sgt. Kanupke was asked by federal DEA officers to effect a stop on Defendant's vehicle only if he had independent probable cause to do so.  Sgt. Kanupke observed Defendant engage in a series of non-federal traffic violations and stopped Defendant for those infractions.   While speaking with the Defendant, Sgt. Kanupke noticed in plain view what appeared to be bricks of cocaine in the Defendant's truck.  Sgt. Kanupke twice asked Defendant if he could search the vehicle.  Both times Defendant consented to a search.  Upon searching Defendant's truck, a large quantity of cocaine was seized.

The Defendant was then arrested and detained on state charges.[3]

There is no evidence supporting Defendant's argument that state officials held him on federal charges, nor is there evidence that federal agents directed state officials to hold Defendant until federal charges could be brought against him. There is no evidence that this was anything other than an arrest on state charges. The fact that Defendant was later indicted on federal charges does not convert his original arrest to one on federal charges, and Defendant's suggestion that it does is not supported by evidence or reason. Since Defendant's subsequent federal detention and indictment were well within the time limits permitted by § 3161(b), Defendant's objection to the R&R findings that the Speedy Trial Act was not violated is overruled.

### B. Defendant's Motion to Suppress

Defendant also argues in his Objections that Sgt. Kanupke did not have sufficient probable cause to make the traffic stop that lead to the seizure of cocaine possessed in Defendant's truck. Defendant claims the evidence presented at the

---

[3] At the April 11 Hearing, Sgt. Kanupke testified that he recalled indicating in his report that Defendant was charged with "trafficking of cocaine, failure to maintain a lane and improper lane change, I believe." Transcript of April 11, 2007 Suppression Hearing ("Hr'g Tr.") at 81-82.

April 11 Hearing establishes that, "[w]hat [Sgt. Kanupke] did was *cause* the defendant to engage in certain conduct–i.e. changing lanes quickly–so that the officer could then detain the defendant." Objections at 5. The Defendant essentially argues that Sgt. Kanupke manipulated him to engage in unlawful driving behavior to justify a stop of Defendant's truck.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision . . . . As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810-11(1996); accord Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004), cert. denied, 543 U.S. 988 (2004). Probable cause exists when "the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Miller v. Harget, 458 F.3d 1251,

1259 (11th Cir. 2006), cert. denied, 127 S. Ct. 2429 (2007). "It is well-settled that an officer's subjective motivations do not affect whether probable cause existed." Id. at 1260 (citing Whren, 517 U.S. at 813).

As an initial matter, the Defendant's interpretation of the evidence developed at the April 2007 Hearing is misleading. The Court's review of Sgt. Kanupke's testimony discloses that he carefully articulated the probable cause he had to stop the Defendant's truck, and he does not appear to have caused Defendant's erratic, unsafe driving behavior. The testimony about what occurred on speaks for itself:

> Q. When you first observed the [Defendant's] vehicle at approximately 7:00 that morning in that middle lane, did you observe any traffic violations?
>
> A. [By Sgt. Kanupke] As I pulled up toward the vehicle,[4] the vehicle suddenly made – attempted to make a lane change to the right. He crossed over, the right tires over the dotted line to go to the next lane, but there was traffic in that lane. He was forced to come back, never

---

[4] Sgt. Kanupke did not have his emergency lights on as he followed the Defendant's vehicle.

>   used a turn signal. As he came back to his lane, that vehicle was –
>   there was then room for him to make the lane change. He then
>   changed lanes.
>
>   Q.   Did he use a turn signal on the second attempt?
>
>   A.   No.

Hr'g Tr. at 49. Despite what Sgt. Kanupke observed, he did not then initiate the stop and instead continued to observe the Defendant's vehicle. He testified further:

>   Q.   And, then, now I think you're testifying that he made an effort to get
>   to a right lane further out?
>
>   A.   Yes, to another – one more lane to the right.
>
>   Q.   Did he give a turn signal at that time?
>
>   A.   He did not. As he attempted to change into that lane, there was a
>   vehicle there. That vehicle had to apply brakes and also sound the
>   horn because it was close to making a collision.[5]

---

[5] O.C.G.A. § 40-6-123(b) requires a driver to use a direction signal to alert drivers behind him of an impending lane change. Had the Defendant used a direction signal here, he may well have alerted the other driver that the Defendant was about to change lanes. Failure to use the signal appears to have nearly caused an accident. Defendant's lane change activities appear also to violate O.C.G.A. § 40-6-48(1), which provides: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver

Q. Did the [Defendant's truck] return to the lane that it was in after the car honked his horn?

A. He returned to the lane he was in, yes.

Q. And did he thereafter attempt to get over again to that lane?

A. He did, at which time he was successful in making that lane change.

Q. Did he give a turn signal as he attempted to get over to that second right-hand lane?

A. No, he did not.

Q. Did the [Defendant] thereafter attempt to get over into a third right-hand lane?

A. He did attempt to get over to the exit lane for Peachtree Industrial northbound, yes.

Q. And was he successful in that effort?

A. No, he was not.

Q. Did he give a blinker in that attempt to get over to that third lane?

A. No, he did not.

Q. And did he thereafter try again to get over to that third lane?

---

has first ascertained that such movement can be made with safety."

> A. He attempted to get into the exit lane, but was not successful. He never did make it to that final lane.
>
> * * *
>
> Q. And approximately how much time elapsed from that first attempt to change lanes to that final attempt to change lanes?
>
> A. Approximately seven, eight seconds.

Hr'g Tr. at 50-52. What this testimony fairly shows is that Defendant, over a matter of seconds, attempted to make three lane changes, twice pulling into lanes occupied by other vehicles, causing one to brake and sound its horn to avoid collision. After observing all of this behavior over a matter of seconds, Sgt. Kanupke turned on his emergency lights and pulled the Defendant over.[6]

Sgt. Kanupke provided a careful, detailed explanation of the driving conduct he observed that day and which supported his decision to make the traffic stop. The fact that he was also coordinating with federal agents in their investigation

---

[6] On these facts, Defendant suggests Sgt. Kanupke "caused" him to engage in his erratic – and dangerous – driving conduct. This interpretation of the events is not consistent with the officer's testimony or with common sense. In the Court's experience, when a person is followed by a police vehicle without its lights or sirens engaged, one ordinarily slows down, drives more carefully and is careful to display the conduct required of careful, law-abiding drivers, to include abstaining from erratic behavior and using direction signals to forecast lane changes.

does not negate his independent probable cause to stop the Defendant's truck. Here, Sgt. Kanupke articulated the facts upon which he based his decision to make the stop, and those facts compel the Court to conclude that he had independent probable cause to make the stop and that the stop was constitutionally permissible. Defendant then consented twice to the search of his vehicle, which resulted in a constitutional seizure of cocaine. Defendant's objection to the recommendation in the R&R that his motion to suppress be denied is overruled.[7]

---

[7] The Magistrate Judge alternatively recommended the motion to suppress be denied because there was, in the collective knowledge of DEA agents and Sgt. Kanupke, probable cause to arrest the Defendant on drug charges. See United States v. Willis, 759 F.2d 1486, 1494 (11th Cir. 1985), cert. denied, 474 U.S. 849 (1985) (in determining probable cause to arrest, a court may examine the collective knowledge of law officers, if officers maintained at least a minimum level of communication); United States v. Blasco, 702 F.2d 1315, 1324 (11th Cir. 1983), cert. denied, 464 U.S. 914 (1983) ("Probable cause to arrest exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed."). Here, DEA agents, through the wiretap surveillance, had reason to believe that on July 10, 2006 Defendant would possess drugs in his truck, and they communicated this information to Sgt. Kanupke. When Sgt. Kanupke saw Defendant's truck, he observed it being driven in an erratic way, suggesting Defendant may have been trying to evade police. The Magistrate Judge's recommendation that Sgt. Kanupke had probable cause to effect the traffic stop because of his knowledge of the drug investigation and the collective knowledge of the DEA agents is a viable, albeit weak, alternative ground to uphold this traffic stop.

### C. Other Findings

The Court has reviewed those portions of the R&R to which Defendant did not assert an objection, and finding no plain error, adopts those findings.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** the R&R [105] and incorporates it as part of this Order and Opinion, as supplemented by the Court's findings herein.

**IT IS HEREBY FURTHER ORDERED** that Defendant Valdomero Ochoa Pineda's Objections to Magistrate Judge Linda Walker's Report and Recommendation [106] are **OVERRULED.**

**IT IS HEREBY FURTHER ORDERED** that Defendant's Motion to Dismiss [31] and Motion to Suppress [32] are **DENIED**.

**SO ORDERED** this 10th day of March 2008.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE